**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KANGI E. CREWS<br>Plaintiff,<br>v.<br><br>AMERICAN CREDIT ACCEPTANCE,<br>PAR NORTH AMERICA,<br>INTERNATIONAL RECOVERY SYSTEMS,<br>CLIFFORD WILLIAMS,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.: |

**COMPLAINT**

**A. Jurisdiction and Venue**

1. Jurisdiction arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337(a), together with the pendent jurisdiction of the court. Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

**B. Parties**

3. Plaintiff, Ms. Kangi E. Crews, is an adult individual who presently resides at and has a possessory interest in the residential dwelling and property located at 53 N. Millick Street, Philadelphia, PA 19139.

4. Plaintiff is a consumer under 1692a(3) and otherwise covered by the FDCPA as consumers and persons pursuant to 1692c and 1692d, respectively.

5. Defendant AMERICAN CREDIT ACCEPTANCE [hereinafter "ACA"] is a

corporation engaged in the business of banking and lending with a registered and regular place of business located at 961 E Main St, Spartanburg, SC 29302, and regularly and at all times relevant herein conduct business in the Commonwealth of Pennsylvania and in Philadelphia County.

6. Defendant PAR NORTH AMERICA is a corporation regularly engaged in the business of debt collection and automobile repossession in Philadelphia County in the Commonwealth of Pennsylvania, and with principal offices at 12800 N. Meridian Street, Suite 350, Carmel, IN 46032.

7. Defendant INTERNATIONAL RECOVERY SYSTEMS ("IRS") is a corporation regularly engaged in the business of debt collection and automobile repossession in the Commonwealth of Pennsylvania and in Philadelphia County, and with offices 520 Pusey Avenue, Collingdale, PA 19023.

8. Defendant CLIFFORD WILLIAMS is a natural individual and an agent or employee of ACA, PNA, and/or IRS.

9. At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

10. At all times relevant hereto, defendant ACA hired the other defendants and the other defendants acted as ACA's agents at all times relevant.

11. At all times relevant hereto, defendant PNA hired the Defendant IRS and/or WILLIAMS, and/or these defendants acted as PNA's and/or IRS's agents at all times relevant.

## C. Factual Allegations

### a) General Allegations

12. Plaintiff financed the purchase of the subject vehicle (2003 BMW 330I WBAEV53483KM31565) by and through a consumer finance purchase agreement assigned to and held by defendant ACA.

13. As a result of caring for her now deceased mother during a long illness and assisting her with her bills, including her mortgage, plaintiff fell a little behind on her payments.

14. At all times relevant, plaintiff remained in close contact with defendant ACA and was in the process of making arrangements to become current on her payment obligations.

**b) Unlawful Repossession, Assault, Battery, Trespass, Conversion**

15. Defendant ACA hired defendants PNA and/or IRS to repossess the subject vehicle.

16. Defendants PNA and/or IRS assigned the subject repossession to defendant IRS and/or WILLIAMS.

17. In the early morning on January 4, 2016, plaintiff's vehicle was parallel parked on the street in front of her residence.

18. Plaintiff noticed defendant WILLIAMS walking around plaintiff's vehicle, while she was getting ready for bed.

19. Plaintiff grabbed her keys and ran out the door and jumped in her vehicle and locked the doors.

20. Plaintiff told defendant repo-agent that she had been in contact with ACA and had made payment arrangements.

21. Plaintiff told defendant repo-agent not to take the subject vehicle and to leave her repeatedly.

22. When plaintiff prepared to drive away, defendant WILLIAMS blocked her vehicle in with his truck.

23. Defendant WILLIAMS refused to show plaintiff any identification.

24. Defendant WILLIAMS refused to leave and started to pull the subject vehicle sideways out of the parking spot.

25. Defendant WILLIAMS refused to leave and shouted insults and profanities and threats at plaintiff.

26. When plaintiff moved her vehicle, defendant WILLIAMS pretended to be hit and threatened to call the police unless plaintiff go out of the vehicle and let him take it.

27. Plaintiff told defendant WILLIAMS to go ahead and call the police if her would not stop and go away.

28. Plaintiff wanted to call the police herself, but had not grabbed her cell phone when she ran out of her house.

29. When the police arrived, plaintiff was still inside the subject vehicle.

30. She was too afraid to leave the vehicle.

31. When the police arrived, defendant WILLIAMS gave the police a false report that he had possession of the vehicle before plaintiff jumped in the vehicle and demanded that he go away and falsely reported that plaintiff hit him with the vehicle.

32. As a result of defendant WILLIAMS's false reports, plaintiff was arrested at the scene and prosecuted.

33. With the assistance of the police, and only through the assistance of the police, defendants were able to take possession of the subject vehicle.

34. Defendants thereafter, upon explicit notice of the aforementioned misconduct, defendants retained possession of the subject vehicle, and gained benefits, including pecuniary benefits therefrom, and refused to return it to plaintiff.

35. As a result of defendant WILLIAMS's aforementioned false statements, plaintiff was charged with several crimes.

36. Defendant WILLIAMS continued to testify falsely during the Preliminary Hearing.

37. Once defendant WILLIAMS became aware that plaintiff and her counsel were aware of his criminal history, as more fully described below, and that he and/or his employer must have misrepresented his criminal history to the Pennsylvania Department of Banking Securities (DOBAS), defendant WILLIAMS stopped showing up at each listed trial date.

38. Finally, as a result of defendant WILLIAMS failing to attend the listed trial dates, the charges against plaintiff were dismissed.

39. Plaintiff suffered extreme emotion distress during and as a result of defendants' actions, including loss of appetite, loss of sleep, nausea, and weight loss.

40. Defendants IRA and/or IRS did not have a valid Debt Collector – Repossessor license and/or were not acting properly pursuant to such a license.

41. A Repossessor or his/her employer must be a licensed Debt Collector – Repossessor.

42. If the employer is a licensed Debt Collector – Repossessor, then each repossession agent must be issued an identification card.

43. To obtain an identification card, the employer and the agent must submit a sworn

statement to DOBAS, including personal information, including DOB and Social Security Number, and that said agent has never been convicted or a crime or describing the circumstances related thereto.

44. Defendant WILLIAMS has pleaded guilty to or been convicted of multiple felonies, including robbery, and willfully supplying false identification related to the purchase and/or transfer of firearms.

45. Defendant WILLIAMS most recent convictions were uncovered in connection with prior filed case (Gotcha Auto Recovery, et al. v. American Locators and Recovery, et al., PCCP 1303-1915), which is a matter of public record, related to WILLIAMS's armed invasion of a business and the armed theft of several commercial vehicles.

46. It was established that defendant WILLIAMS had used and been using false personal information to obtain firearms and/or firearms registration.

47. Defendant WILLIAMS was terminated from his then employer for supplying false personal information to conceal a prior criminal conviction and his actions during the aforementioned armed repossession.

48. It is a Debt Collector – Repossessor's duty and part of the standard of care to perform a background check of agents.

49. Therefore, defendant IRS either was well-aware of defendant WILLIAMS's criminal background and/or did not perform any or an adequate background check.

50. Therefore, either defendant IRS was well-aware of

51. At the time the aforementioned defendants ACA, IRS, PNA and/or WILLIAMS engaged in the collection and repossession activities described herein, defendants were debt

collectors as defined by 15 U.S.C. §1692a(6) insofar as:

a) Each defendant uses a tow vehicle as an instrumentality of interstate commerce in its business the principal purpose of which is the enforcement of security interest.

b) Each, by their respective actions in breaching the peace to effectuate a repossession, lost any present right to the collateral securing plaintiff's debt.

52. Throughout the collection process described above, and as a direct and proximate result of the actions of defendants in harassing, oppressing, and abusing Plaintiff, Plaintiff suffered actual damages in the form of interference with their property rights, physical injuries, emotional distress, anxiety, embarrassment, fear, and sleeplessness, among other negative emotions.

53. The actions of defendants as before described were performed by their respective agents, officers, and employees within the scope of their actual or apparent authority.

54. Non-judicial repossessions involve well and long recognized inherent, special and peculiar risks of physical confrontation, including the real and present risk of death or injury, to everyone involved in or around the repossession including the agents, debtor, family, neighbors and bystanders, even if said repossessions are performed in the prescribed manner in accordance with the law.

55. It is well and long recognized that the mode and manner by which non-judicial repossessions are assigned and effectuated may increase significantly the risk of escalation and physical confrontation and resulting death or injury.

56. According to a recent report issued from the National Consumer Law Center, entitled Repo Madness: How Automobile Repossessions Endanger Owners, Agents and The

Public, self-help or non-judicial repossessions are inherently dangerous and involve the risk of violent confrontation. Dozens of consumers, repossession agents and bystanders have been killed, injured or traumatized in self-help repossessions done under state laws that allow automobile dealers and lenders to take cars without court action or the involvement of law enforcement. Pistols, rifles, shotguns, knives, fists and automobiles are frequently wielded as weapons in confrontations arising out of self-help repossessions. Since Jan. 1, 2007, those confrontations have resulted in at least six deaths, dozens of injuries and arrests and uncounted traumas. The report is available on the NCLC auto page:

http://www.consumerlaw.org/issues/auto/index.shtml

**c) Additional Allegations**

57. Pursuant to 13 Pa.C.S.A. 9609 and 69 P.S. § 615D ACA, PNA and IRS are responsible and liable for all of their repossessors' conduct.

58. Defendants PNA, IRS and/or WILLIAMS is not licensed by the Commonwealth as a Debt Collector-Repossessor as required and/or properly so licensed.

59. Anyone involved in a repossession, including hiring a repossessor, must be a licensed Debt Collector-Repossessor. 69 P.S. § 604 [new cite: 12 Pa.C.S.A. §§ 6202 & 6211(a)(3).

60. Plaintiff advised defendant ACA of the repossession misconduct and said defendant told plaintiff that that was between her and the repossessors.

61. Upon information and belief, defendant ACA retained the vehicle and demanded additional payment despite explicit notice of the subject misconduct.

62. Upon information and belief, defendant ACA paid defendant IRS for its service

despite explicit notice of the subject misconduct.

63. Upon information and belief, defendant PNA and/or IRS received and retained payment for its service despite explicit notice of the subject misconduct.

64. Upon information and belief, defendant PNA and/or IRS paid defendant WILLIAMS despite explicit notice of the subject misconduct.

65. Upon information and belief, defendant WILLIAMS received and retained payment for his service despite notice of the subject misconduct.

**D. Causes of Action**

**COUNT I**
**Violations of the FDCPA**
**(Plaintiff v. ALL DEFENDANTS EXCEPT ACA)**

66. Plaintiff incorporates all of the facts and allegations set forth in this Complaint.

67. Plaintiff was a "consumer" under the FDCPA. 15 USC § 1692a(3).

68. At all times relevant hereto, plaintiff constituted a "person" and fell within the scope and protections of the FDCPA, including protection from any conduct the natural consequence of which is to harass, oppress or abuse and/or which arises out of any unlawful repossession.

69. At all times relevant hereto Defendants IRS, PNA and REPO-REPO AGENT TYLER were attempting to collect an alleged debt to which was incurred for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

70. At the time of the subject unlawful repossession, defendants had lost their then present right of possession, if any, as a result of the above-described breeches of the peace, including the taking of the vehicle over plaintiff's objections, the assault and battery of plaintiff,

the defiant trespass on plaintiff's property, and the damage of plaintiff property.

71. The aforesaid Defendants, by their conduct as described above, violated the FDCPA as follows:

    a) §1692d, engaged in conduct the natural consequence of which is to harass, oppress, or abuse a person;

    c) §1692e(7), engaged in conduct to disgrace the debtor by communicating with third-parties concerning the debt;

    d) §1692f, by unfairly and unconscionably collecting or attempting to collect the debt by its actions described above and below;

    e) § 1692d(1), used or threatened the use of violence or other criminal means to harm the consumer or his/her property;

    f) § 1692d(2), used profane language or other abusive language;

    g) § 1692e(5), threatened to take any action that cannot legally be taken or that is not intended to be taken;

    h) § 1692e(10), used any false representation or deceptive means to collect a debt or obtain information about a consumer;

    i) § 1692f(6)(a), took or threatened to unlawfully repossess or disable the consumer's property without right;

    j) § 1692b(2) Contact of Third Party: Stated that the consumer owes any debt;

    k) § 1692c(B) With anyone except consumer, consumer's attorney, or credit bureau concerning the debt;

    l) § 1692e(7) Consumer committed any crime or other conduct in order to disgrace the consumer;

m) § 1692f(1) Attempt to collect any amount not authorized by the agreement creating the debt or permitted by law.

**COUNT II**
**Violation of U.C.C.**
**(Plaintiff v. DEFENDANTS)**

72. Plaintiff incorporates all facts and allegations set forth in this Complaint.

73. The "repossession" of the subject vehicle by defendants which is collateral for the debt falls within the definition of "consumer goods" contained in 13 Pa. C.S.A. § 9102. The transaction in question was a consumer-goods transaction in that plaintiff owed the obligation primarily for personal, family or household purposes, and the collateral was consumer goods.

74. Plaintiff both fell within the scope and protections afforded by the UCC from unlawful repossessions.

75. Pursuant to the UCC Section 9609, a non-judicial (self-help) repossession – without a Court Order – may only be effectuated where there is a default, an enforceable contract, and without breaching the peace.

76. Defendants violated the provisions of Article 9, Part 6 of the U.C.C., including, but not limited to committing a breach of the peace in the repossession of the subject Vehicle in violation of 13 Pa. C.S.A. § 9609(b)(2) by:

a) Harassing, oppressive and abusive behavior described above such as impersonating law enforcement and threatening arrest which is an affront to public order;

      b) Threatening Plaintiff;

c) Refusing to stop and leave;

d) Using profanity;

e) Using the police to effectuate the repossession;

f) Making a false report to the police.

77. None of the Defendants possessed a valid and then present right of possession at the time of the attempted or effectuated repossessions.

78. These U.C.C. violations caused plaintiff actual damages in extreme emotional distress and, in additional and/or in the alternative, statutory damages under 13 Pa. C.S.A. § 9625.

**COUNT III**
**BREACH OF CONTRACT**
**(Plaintiff v. ACA)**

79. Plaintiff incorporates all facts and allegations set forth in this Complaint.

80. Pursuant to information and belief, the subject financing agreement contained provisions prohibiting the repossession of the subject vehicle involving a breach of the peace.

81. As a result of the aforementioned breach, Plaintiff suffered the injuries and damages set forth more fully above and below.

**COUNT IV**
**VIOLATIONS OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT(FCEUA)**
**73 P.S. § 2270.1 et. seq.**
**AND THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL)**
**73 P.S. § 201-1 et. seq.**
**(Plaintiff v. Defendants)**

82. Plaintiff incorporates all facts and allegations set forth in this Complaint.

83. Defendant ACA is a "creditor" and Defendants IRS, PNA and WILLIAMS are either "creditors" or "debt collectors" as defined by 73 P.S. § 2270.3 of the FCUEA or otherwise within the scope thereof.

84. Plaintiff is a "consumer" as defined by 73 P.S. § 2270.3 of the FCUEA.

85. Plaintiff fell within the scope of the protections of the FCUEA, FDCPA and UCC from unlawful repossessions and harassing, oppressive and abusive behavior.

86. Insofar above described breaches of the peace by terminated their present right of possession of the vehicle as collateral, then Defendants had no right to the vehicle's possession insofar as the neither the RISC nor the UCC nor the finance agreement permits non-judicial repossession of the vehicle in breach of the peace.

87. Insofar as the aforesaid breaches of the peace described above terminated its present right of possession of the vehicle as collateral, then ACA, IRS, PNA and WILLIAMS had no right to its possession insofar as the purchase contract does not allow repossession of the vehicle in breach of the peace.

88. All of the above contacts by Defendants were "communications" relating to a debt as defined by 73 P.S. § 2270.3 of the FCUEA.

89. The foregoing acts and omissions of these Defendants constitute numerous and multiple violations of the FCEUA and UTPCPL, including but not limited to 73 P.S. § 2270.4(a), as evidenced by the following conduct:

　　a) Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt;

l) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if: (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest.

m) Attempting to collect any amount not authorized by agreement or permitted by law.

90. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law with the purpose of coercing Plaintiff to pay the debt.

91. As a result of the above violations of the FCUEA and UTPCPL, Plaintiff suffered ascertainable loss in the use and value of the vehicle, damage to her credit rating and credit reputation, invasion and interference with her real property rights and use, entitling her to an award of statutory, actual and treble damages and attorney's fees and costs.

**COUNT V**
**Assault and Battery**
**(Plaintiff v. Defendants)**

92. Plaintiff incorporates all facts and allegations set forth in this Complaint.

93. The assault and battery committed by the Defendants more fully described above put the Plaintiff in immediate fear for her physical safety and well-being.

94. The assault and battery was unprovoked and in no manner whatsoever due to any act or failure to act on the part of the Plaintiff.

95. The assault and battery was without consent, right or justification.

96. As a result of the assault and battery, Plaintiff suffered physical injuries and all Plaintiff sustained severe emotional distress, including loss of sleep, loss of appetite, fear, and

upset stomach, for which she has received both counseling and other medical treatment.

**COUNT VI**
**Conversion**
**(Plaintiff v. Defendants)**

97. Plaintiff incorporates all facts and allegations set forth in this Complaint.

98. Pursuant to the established business practices established and implemented by all the Defendants, without right or justification, Defendants took possession, dominion and/or control of Plaintiff's vehicle and denied plaintiff use and quiet enjoyment thereof and withheld and refused and refuse to return it – all without right.

99. The subject vehicle was transferred to the defendants' possession.

100. Defendants retained possession and refused to return the vehicle without immediate and further payment without right.

101. As a result of the Defendants' misconduct, the Plaintiff was deprived of the use and enjoyment of the subject vehicle, the use and enjoyment of the amount financed, and incurred inconveniences and frustration, together with the other damages set forth above and below.

102. The defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to plaintiff's indivisible harm and damages more fully described above and below, and render the defendants joint and severally liable to the Plaintiff.

**COUNT VII**
**Negligence**
**(Plaintiff v. Defendants)**

accordance with the applicable laws and standards.

 112. Defendants breached their duty and were negligent in the following manner;

  a) Failing to investigate or obtain adequate assurance that all agencies and agents were certified by a reputable organization;

  b) Failing to investigate or obtain adequate assurance that all agencies and agents knew, understood and operated according to the applicable laws, including the law against breaching the peace;

  c) Failing to investigate or obtain adequate assurance that all agents received adequate training and were subject to adequate supervision;

  d) Failing to investigate or obtain adequate assurance that all agencies and agents employed adequate recordkeeping procedures;

  e) Failing to investigate or obtain adequate assurance that all agencies and agents had adequate written guidelines for the performance of their jobs and for effectuating repossessions;

  f) Failing to have adequate written guidelines regarding how repossessions must be effectuated to avoid breaches of the peace.

  g) Failing to investigate or obtain adequate assurance that all agents were certified by a reputable organization;

  h) Failing to employ proper recordkeeping polices and practices;

  i) Failing to have adequate written guidelines regarding how repossessions must be effectuated to avoid breaches of the peace;

  j) Failing to have adequate knowledge of the law and regulations related to

    self-help or non-judicial repossessions, including not breaching the peace, and consumer rights to resist.

k) Failing to adhere to the laws and regulations requiring non-judicial repossessions may only be effectuated without a breach of the peace, and without conflict or objection.

113. Defendants do not now and have never investigated or obtained adequate assurance of any of the following:

a) that any of its repossession services or agents is certified;

b) that any of its repossession services or agents understands the laws and regulations related to self-help repossessions;

c) that any of its repossession services or agents understands what is and is not a breach of the peace;

d) its repossession services' and agents' standard policies and practices for effectuating self-help repossessions;

e) its repossession services' and agents' criminal backgrounds;

f) whether its repossession services or agents carry weapons while performing self-help repossessions;

g) its repossession services' and agents' record keeping policies and practices, especially related to consumer objections and/or confrontations;

h) its repossession services' and agents' policies and practices related to consumer objections and demands to stop the self-help repossession;

i) its repossession services' and agents' policies and practices related to

using police to effectuate self-help repossessions.

114. Defendants do not now and have never provided its repossessions services or agents with any training, instruction, guidelines (written or otherwise) on how to effectuate self-help repossessions, including any information regarding the laws applicable to self-help repossessions, what a breach of the peace is, consumer rights to object and demand a stop to the repossession, using the police to effectuate the repossession, yelling at or insulting consumers, recording the circumstances of any consumer objections or confrontations, and/or regarding what to do or not to do during a self-help repossession.

115. The Plaintiff, as owner and possessor of the subject vehicle, was owed the duty of proper hiring, training and/or supervision.

116. Defendants' compensation, training and/or supervision of the defendant repossession agents encouraged the defendant repossession agents to breach the peace in furtherance of their repossession activities, by, among other things, ignoring consumer objections or instructions to stop and/or using police officers to effectuate repossessions.

117. The aforesaid compensation, hiring, training and supervision encouraged negligent, conduct, and was in complete disregard for the health, safety and rights of persons, including the Plaintiff; therefore, the acts were negligent.

118. As a direct result of the aforesaid breach of duty, Plaintiff suffered the injuries and damages set forth more fully above and below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the

Defendants for the following:

A. Declaratory judgment that the noted defendants' conduct violated the FDCPA, UTPCPL, UCC and FCEUA.

B. Statutory damages pursuant to 15 U.S.C. § 1692k;

C. Actual damages for physical injury, fear, and emotional distress, and damages to credit ratings and credit reputations;

D. Reasonable attorney fees and costs.

E. Damages under the U.C.C. as described herein;

F. Actual damages for loss of the use and value of the vehicle;

G. Treble damages and counsel fees pursuant to the FCEAU and UDAP.

H. Punitive damages.

**TRIAL BY JURY**

120. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed. R. Civ. Pro. 38.

**Dated: 12/22/2016** (handwritten correction over "03", initialed "WCB")

/s/William C. Bensley

**BENSLEY LAW OFFICES, LLC**
**Attorney for Plaintiff**
**By: William C. Bensley, Esquire**
**Pa. Id. No. 79953**
**1500 Walnut Street, Suite 900**
**Philadelphia, PA 19102**
**(267) 322-4000**

Certificate of Service

I, WILLIAM C. BENSLEY, counsel for Plaintiff, hereby certify that I filed the foregoing electronically and that all parties who have entered appearances have been served via ECF email. All other parties have been served by first-class mail.

Dated: December 22, 2016         /s/ WILLIAM C. BENSLEY